St. Andrews Bay Land Company, Appellant, vs. Ann W. Campbell, Appellee.

1. Where A. alleges, in a bill of complaint, that her father, J. C., who afterwards died, and of whom she is an heir, together with L. & G., purchased from the United States an undivided interest in a tract of land, a certificate for which issued to L. & G. and the heirs of J. C., and the Receiver's receipt and the patent issued by the United States, in evidence in the cause, declare the purchase to have been made by L. & G., and three other persons by name, as heirs of J. C.: *Held,* That the allegations of the bill are not sustained by the proof, and that a decree directing a partition of the land, is erroneous.

2. No facts are in issue unless charged in the bill, and no proofs can generally be offered of facts not in the bill, nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence; for the Court pronounces its decision " *secundum allegata et probata.*"

Appeal from a decree of the Circuit Court for Jackson County.

The opinion of the Court contains a full statement of the facts appearing in the record in this case.

*R. L. Campbell* and *James T. Archer* for Appellant.

*M. A. Long* and *John Erskine* for Appellee.

DOUGLAS, J., delivered the opinion of the Court.

This is an appeal from an interlocutory decree of the Circuit Court of Jackson County, brought under the act of the last session of our General Assembly, Pamphlet Laws, page 101, Sec. 3, which provides for such a proceeding. The suit was instituted in the Court below by Ann W. Campbell, who claims an interest in a tract of land situated at St. Andrews Bay, as heir to her father, (the late) John Clark. She alleges in her bill " that her father, the late John Clark, together with William M. Loftin and Pe-

ter W. Gautier, Sen., purchased from the Government of the United States an undivided interest in the tract of land situate on St. Andrews Bay, and known in the map of Government surveys, as lot number (5) five, in section six, Township four, Range fourteen, south and west, containing eighty-six 50-100 acres, a certificate for which issued to the said Loftin and Gautier, and the heirs of said Clark (he having in the meantime departed this life,) by the Register of the Land office, and afterwards in like manner a Patent issued to said parties from the United States." "That afterwards an agreement was made between said parties to 'divide' the said fractional lot so as to give to each their respective improvements, making a fair, equitable division thereof, giving to each as. near as possible an equal fronting on the Bay, that is one half to said Loftin, one half of the other half and two acres over and above that half, to the heirs of said Clark, and the remainder to said Gautier." And further, "that. the said parties, Loftin, Gautier and Wilie P. Clark, (who, with your oratrix, are the only surviving heirs of said Clark,) together with the late husband of your oratrix, John W. Campbell, sold and bargained to the said Land Company, or to Jesse H. Willis, Isham G. Searcy, and Richard H. Long, parties of the said Land Company, all their interest and right in the said lot No. five, so that a division thereof became necessary," and " that after the death of the said John. W. Campbell, she became desirous of having the right and interest which she was entitled to in the said property set off and divided to her, amounting, as she conceives, to eleven acres and 76-100, she having an interest equal with her brother, the late Wilie P. Clark," and prays " that her portion and share of said lot be assigned and set off to her by metes and bounds," &c. These are all the allegations of the bill which are deemed material to the decision of this case.

The answer of the Appellant, (respondent in the Court below,) states, " that it appears from the receipt of the Receiver of the Land Office at Tallahassee, and a patent issued thereon, November 5, 1841, that the land mentioned in the bill was purchased from the United States by Loftin, Gautier, Wilie P. Clark, John R. W. Clark, and John W. Campbell, heirs of John Clark, deceased; that on the 13th July, 1839, the said Wilie P. Clark and the said John W. Campbell, sold their respective interests in the said land to the said Company or its trustees; that a town has been laid out thereon, and valuable improvements made by said Company on 'said land, and that the respondents have been informed and believe the land in question was settled by one Allen, but that no certificate of purchase or patent had issued to him; that Loftin, Gautier, and John Clark purchased *Allen's* claim, and afterwards divided the tract *according to their respective interests.*"

A replication was filed March 1st, 1852. The certificate of the Receiver, which appears in the record as exhibit B., is as follows, to wit :

No. 554. 

*Pre-emption under Act of* 1826,
Receiver's Office at Tallahassee.

Received from William M. Loftin, Peter W. Gautier, sen., and Wylie P. Clark, John R. W. Clark, John W. Campbell, heirs of John Clark, deceased, of Florida, the sum of one hundred and eight dollars 12½ cents, being in full for lot No. 5, Sec. 6, Township 4, Range 14, south and west, containing 86 50–100 acres at the rate $1.25–100 per acre. $108.12½. (Signed) R. K. CALL, Receiver.

The patent, which is in accordance with the receipt, the articles of association of the Company, the deed from John W. Campbell to the Trustees of the Company, and the fol-

lowing admission of the parties, are also in the record, viz.:

"In this case the respondent admits that John Clark died in Washington County, Florida, on or about the twelfth day of October, A. D. 1832, leaving three children, to wit: Complainant, Ann W. Campbell, wife of John W. Campbell, Wylie P. Clark and John R. W. Clark, and that John R. W. Clark died in May, 1835, leaving no children;" " and the Complainant admits that John W. Campbell died anterior to the commencement of this suit, and that he, the said Campbell, left a number of children by his marriage with the Complainant."

This is *all the evidence* which the record exhibits. The allegation in the bill, that John Clark purchased the land from the United States, is negatived both by the answer and the proof; and there is nothing in the record to show that he had any title whatever to the lot of land in controversy or any part thereof. The answer to be sure states, " that Loftin, Gautier and John Clark purchased Allen's claim, and afterwards divided the tract according to their respective interests;" but there is no averment or suggestion as to the nature of Allen's claim. It may have been merely for improvements, or he may have had a pre-emption right. The certificate of the Receiver of the Land Office, before mentioned, is headed "Pre-emption under act of 1826," and from this it has been argued that Allen's claim, which Loftin, Gautier, and John Clark purchased, must have been a pre-emption right, but it by no means follows. Again it has been urged that the certificate and patent are to the heirs of John Clark, that Mrs. Campbell is an heir, and therefore entitled to a share as such; but here we are met by the difficulty that both the certificate and patent were issued to certain persons by name, as heirs of John Clark, and that her name is not mentioned in either. To

get over this difficulty, it has been suggested and urged, with some plausibility, that Mr. Campbell's first name, John, was probably inserted in the certificate and patent instead of Mrs. Campbell's first name Ann. This may be so, but there is no evidence to that effect, and we do not see how this, in the present shape of the case, aids the Complainant, (the present appellee :) she does not allege in her bill any such mistake, or ask to have the certificate or patent reformed. If Loftin, Gautier, and John Clark purchased of Allen a pre-emption right, and if John Clark, during his life, in good faith aided in carrying it out, this may have raised an Equity in Mrs. Campbell after his death, as one of his heirs, to a share of the tract ; and if' the Company purchased with notice of such Equity, they would be bound by that notice, and estopped from defending themselves against it.

Mrs. Campbell appears, from the record, to have a valid claim to the share of her brother, John R. W. Clark, deceased, whatever it may be. ·

The Master to whom, by the interlocutory decree from which this appeal was taken, " it was assigned to ascertain the several proportions of the respective parties," states that Mrs. Campbell, as the heiress of her father, and entitled to one half, is entitled to eleven acres and eight-hundredths, and the Land Company is entitled to the like quantity, as holding the interest of the other heir, Wilie P. Clark, the said interest of the parties to embrace the improvements respectively made by the said parties, Gautier, Loftin and Clark. How or upon what evidence he ascertained the proportions of the respective parties, does not appear, and as the decree under which his report was made was appealed from, this is not a matter for our enquiry. The report is not in strictness before us ; but having come to the conclusion that the matters in the record do not justify the

decree complained of, we think that we may with propriety look into it, with a view to ascertain whether any good would be likely to result from sending the case back for further proceedings; and without intending to express any opinion as to the nature of the claim purchased of Allen by William M. Loftin, Peter W. Gautier, Sr., and John Clark, we may be permitted to say that the record discloses enough to render it proper that the appellee should have a further opportunity, by amending her bill, or filing a supplemental one, to place her claims fairly and fully before the Court, to shew, (if the fact exists,) that her father, John Clark, had an interest in the tract of land in question that descended to her; that the appellant purchased this interest *with notice of her equity*, and especially to show her right as heir of her brother, the said John R. W. Clark. In the bill now before us, she makes no claim as heir of this brother, nor is his right admitted by the answer, although it appears from it, and the proofs in the case, that he had some interest in said tract. But no facts are properly in issue unless charged in the bill, and of course no proofs can generally be offered of facts not in the bill, nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence; for the Court pronounce its decisions " *secundum allegata et probata.*" Story's Eq. Pl., Sec. 257; Crockett vs. Lee, 7 Wheaton, 522; Jackson vs. Ashton, 11 Peters, 229. In Jouhan vs. Child, 1 Bro. C. C., 94, Lord Thurlow would not listen to any evidence that went to prove a deed fraudulent, because there was no allegation of fraud in the bill; and in James vs. McKernan, 6 John. Rep., 543, 565, the Court said : " It is not a sufficient answer to the objection in this case that it must be deemed to have been waived because not raised upon the hearing. The counsel might well have presumed that the testimony to that point (a

matter not charged in the bill,) would not have been taken into consideration ;" and in the case of New England Bank vs. Lewis, 8 Pickering, 113, it was held that "the answer of a defendant in equity, of facts which are not enquired of in the bill, is not evidence of such facts." And in the case of Jackson vs. Ashton, 11 Peters, 249, the Court say : it may be proper to observe that no admissions in an answer, can, under any circumstances, lay the foundation for relief under any specific head of equity, unless it be substantially set forth in the bill. With such authorities before us, (and numerous others might be cited,) we feel warranted in withholding our assent to the decree complained of in this case. It has been urged that we can decree for the complainant upon the proofs in the cause, notwithstanding they vary so materially from the case made by the bill. But beside that variance, we do not consider those proofs sufficient to justify such a decree.

We are aware that there are cases, where, on a bill for the specific performance of a contract, the Court has made a decree upon a contract set up in the answer varying from that alledged in the bill, as in Bradford vs. the Union Bank of Tennessee, 13 Howard's U. S. Rep. 69, and cases therein cited, the answer being treated as a cross bill, and made " the foundation for a proper decree by the Court." And that Court says, the same principle seems to be equally applicable to the Complainant, where he insists upon a decree for a specific performance of the contract as established by the proof, although different from that set up in the bill; but to warrant such a decree for the Complainant in such a case, the answer must, it is conceived, set up the variant contract and submit to a decree upon it, otherwise it would contravene that sound, salutary and well established rule, that a party is not to be *surprised* by proof offered by his adversary, at the trial or hearing, which is not in accord-

ance with some charge in the pleadings. "The rule, (say the Court in Small *et al.* vs. Owens and Green, 1 Maryland Chancery Decisions, 368,) cannot be questioned that a Complainant in his bill must put in issue whatever he intends proving, otherwise the evidence will be excluded. The Court of Chancery decrees '*secundum allegata et probata*,'" citing Haywood vs. Carroll 4 H. & J., 518. "This rule is necessary (that Court adds,) to prevent *surprise*, but the abrogation of it would enable the Complainant to take from his adversary the benefit of his answer, which, if responsive to the bill, would require a stronger measure of evidence to overcome, than if the fact to be proved was not noticed in the pleadings ;" and Mr. Justice Story in his Eq. Pl. Sec. 264, says, "If an admission is made in the answer, it will be of no use to the plaintiff unless it is put in issue by some charge in the bill, and the consequence is that the plaintiff is frequently obliged to ask leave to amend his bill, although a clear case for relief is apparent upon the face of the pleadings. So far, then, as this rule is relaxed, it is, we think, intended to be confined to cases where the defendant sets up a variant contract in his answer." Such is not this case : here the bill is for a partition. The right of the Complainant is not admitted by the answer. She is bound, therefore, to make such proof as would entitle her to a recovery in an action of ejectment. 2 Barbour's Chy. Prac. 295 ; Larkin vs. Mann, 2 Paige, 27–28.

Let the decree of the Court below be reversed, and the cause remanded with leave to the appellee to amend her bill or file a supplemental bill in that court, and for such other and further proceedings, not inconsistent with this opinion, as the interests of the parties may seem to require.

The costs to be taxed against the appellee.